### HADDEN *v.* WARING.

*(Supreme Court, General Term, First Department.* March 29, 1889.)

1. CONTRACTS—EVIDENCE—PROVINCE OF COURT AND JURY.

　　Plaintiff's assignor said to defendant, who was engaged in manufacturing and laying under-ground electrical cables, that he could furnish defendant an improved printing telegraph instrument for long distance work, and signed a memorandum of payments, one-third of which was "in stock of company organized to operate printer." There was evidence that the project of organizing a company to operate the printers was agreed on by them, and that any invention by plaintiff's assignor, and patented improvements thereon, should be assigned to it. A written agreement dated about this time, but executed a year later, recited the invention and application for a patent, and provided that the invention and patent and improvements should be assigned to defendant in consideration of money payments which equaled the amount named in the memorandum, defendant to give his note for a third. *Held,* in an action for a balance on the contract, that the question whether the contract was for the purpose of enabling the parties to turn over to a company to be organized a title to the invention was for the jury.

2. SAME—PAROL EVIDENCE.

　　Parol evidence of such intention is admissible.

3. SAME—PERFORMANCE.

　　Defendant testified that he requested plaintiff's assignor to produce the invention, and make a test which was never done; that a time and place were fixed for the test, but plaintiff's assignor refused to make it, unless paid a certain sum. *Held,* that the question of performance of the contract by plaintiff's assignor was for the jury.

On motion for new trial on exceptions.

Action by William Hadden against Richard S. Waring, to recover the balance alleged to be due on a contract dated June 20, 1882, between defendant and Henry Van Hoevenbergh, plaintiff's assignor, as follows: "Whereas, the said Henry Van Hoevenbergh has invented an improved printing telegraph instrument, for which he has made application to the United States patent-office to grant letters patent; and whereas, the said Richard S. Waring is desirous of acquiring the whole interest in said invention, and in the letters patent of the United States, which may be granted for the same: Now it is hereby agreed that the said invention and any letters patent to be granted for the same as aforesaid, together with such others as may be necessary to take out upon said invention in order to perfect his control of it, shall be assigned and transferred to said Richard S. Waring for and in consideration of the following payments made and to be made, to-wit: Fifteen hundred dollars on the day of the date of this agreement, the receipt whereof is hereby acknowledged; fifteen hundred dollars on or before the 20th day of July, 1882; two thousand dollars within ten days after the allowance of said letters patent; five thousand dollars within six months after said allowance; five thousand

dollars within nine months after said allowance; five thousand dollars within one year after said allowance; five thousand dollars within one year and three months after said allowance; and five thousand dollars within one year and six months after said allowance. It is further agreed that at the expiration of one year from the date of said allowance, the said Richard S. Waring shall, upon demand, deliver to said Henry Van Hoevenbergh, his two promissory notes for the two payments last above mentioned. And in consideration of the premises the said Henry Van Hoevenbergh further agrees that he shall and will assign and transfer to said Richard S. Waring any letters patent of the United States that may hereafter be granted to him for improvements upon said invention." The second and third defenses, in substance, were: (2) That the consideration of the alleged agreement was an instrument capable of doing certain things, and possessing certain characteristics; and Van Hoevenbergh never invented or offered to defendant an instrument possessing the characteristics, or capable of doing the things agreed on, and that therefore the consideration failed. (3) That the writing sued on was not a contract between the parties, but was simply a paper executed for the purpose of carrying into effect one of the provisions of an oral contract made between the parties in June, 1882, and did not express either fully or correctly the terms and provisions of that oral contract, and was not intended to; that by the terms and provisions of the oral contract Van Hoevenbergh was to furnish Waring with an instrument capable of doing certain things, and possessing certain characteristics, which he wholly failed to do, and was unable to do.

Defendant testified that he asked Van Hoevenbergh "to produce the printers, and make the test, and did so more than once.. He never made a test to my knowledge. The last time I asked him to make a test was in the city. The last verbal conversation I had with him was in the city of Washington, about the second week of April, 1884. * * * At the time I refer to, the academy of science was in session at the Smithsonian. I had applied at the Smithsonian to this academy of science to have them appoint a committee to test our cable,—this particular line. They had fixed an evening or a day for this test. Mr. Van Hoevenbergh was sent for as one of the electricians of the company, to assist in making this test. I met Mr. Van Hoevenbergh in the morning that the test was to be made, and * * * he said to me that the printers were just about finished. * * * I says, 'Are you satisfied that they will do all that you agreed to do?' and he says 'Yes; you may put them on from Pittsburgh to New York.' I said, 'All I ask is to put them on and work them a hundred miles, which was the minimum distance that they were required to work.' He says: 'It makes no difference about that. You may put them on to Pittsburgh or Boston or Cincinnati.' * * * I says: 'I'm very glad of it, and you may put them on;' and he says: 'Mr. Waring, I'm very much distressed this morning, and I need a thousand dollars.' I said: 'Mr. Van Hoevenbergh, if your printers are so nearly finished, put them on and test them, and I will give you the $1,000.' He says: 'I won't do anything until you pay me a thousand dollars.' I said: 'You say your printers are ready, or nearly ready, and if you will put them on I will give you the thousand dollars, and just as soon as you protect them by proper patents you shall have your money, if it is to-day.' * * * The arrangement was made with his knowledge. Mr. McElroy was to take charge of the capitol end and Mr. Van Hoevenbergh at the academy of science. * * * Mr. Van Hoevenbergh came in a little late, and after the room was pretty well filled; and he came over to me and nudged me under the shoulders, and he says: 'If you don't give me a thousand dollars now, this test can't go on.' I said: 'Very well, if that is the condition, then we will go on without you; and we will get along with Mr. McElroy.'" The court granted plaintiff's motion for judgment. Defendant's exceptions were ordered to be heard in the first instance at general term.

Argued before VAN BRUNT, P. J., and BRADY and MACOMBER, JJ.

*Charles A. Murphy* and *W. R. Spooner*, for plaintiff. *De Lancey Nicoll*, for defendant.

MACOMBER, J. The plaintiff's assignor, Henry Van Hoevenbergh, a relative of the defendant, is an inventor of electrical devices and instruments. The defendant is a manufacturer of electrical cables and under-ground electrical wires at Pittsburgh, Pa., and is a stockholder in what is known as the "Standard Under-Ground Cable Company," and vice-president and active manager of that company, the business of which is the manufacture and laying of under-ground cables. In a conversation between Van Hoevenbergh and the defendant upon the subject of inventions to meet the business enterprises of the defendant, Van Hoevenbergh said that he could furnish to the defendant an improved printing telegraph instrument for long distance work, which would operate successfully at a distance of a hundred miles at least. Thereupon Van Hoevenbergh furnished a memorandum in writing to the defend-·ant dated June 19, 1882, signed by Van Hoevenbergh only, which is as follows: "R. S. Waring Company, (Limited,) June 19, 1882. Purchase money $30,-000, in installments as follows: $1,500 to be paid June 26th; $1,500 on or before July 20th; $2,000 within ten days of the date that the patent is allowed; $5,000 six months from above date; $5,000 nine months from above date; $5,000 twelve months from above date; $10,000 in stock of company organized to operate printer. Patent to be assigned on payment of first installment. All improvements on original instrument to be assigned without further compensation. This arrangement to include services for six months dating from October 1, 1882. [Signed] HENRY VAN HOEVENBERGH, care J. H. BUNNELL & COMPANY, No. 112 Liberty street, New York."

The defendant testifies that prior to the execution of any agreement between him and Van Hoevenbergh the project of organizing a company for operating these printers was discussed between them, and that it was arranged by them that such company should be organized, and any invention which might be made by the plaintiff's assignor, and patented improvements thereon, should be assigned to that company. This testimony is fully corroborated by the preliminary and tentative proposition of June 19, 1882, above quoted, which provides, among other things, that $10,000 of the purchase price of the patents should be paid in the stock of the company to be organized for the operation of the printer. Some time subsequently, probably in the spring of 1883, the defendant wrote to Van Hoevenbergh as follows: "I have got Dalzell to anticipate my payment from him a few weeks for $2,500, and I gladly let you have it to get you out of your trouble. I expect the company to take my contract with you off my hands,—they want to see the printer working,—but Dalzell requested me to lay the contract before the board at their meeting on next Saturday. Please sign and return the inclosed. I will arrange to pay you the stock as agreed upon on the last payments. Please, also, indorse in your own handwriting on the copy of contract returned to me, ' The first patent under this agreement allowed March 7, 1883,' and place on the contract the date of each payment, and amount, including the last $200. The first payment of $1,500 is in the body of the contract, and therefore needs not to be indorsed. But the remainder of the $6,000 paid—$4,500—you will indorse date and amount as suggested. Send the contract by mail to C. C. Dickey, 100 Diamond street, and I will get it from him."

With these facts before us we are enabled to understand quite clearly the purpose of the parties in entering into the more formal agreement subsequently, which bears date June 20, 1882, but which was not in fact executed until June, 1883.

The second and third defenses may be considered together. They set up a want of consideration, a failure on the part of Van Hoevenbergh to fulfill the agreement on his part, and that the written agreement, though signed by the

parties, was not intended by them to be an effective and binding contract, but, on the contrary, was executed in pursuance of an agreement entered into between the parties in the month of June, 1882, and that the object of the parties to that instrument was the organization of a company to operate it after the same had become perfected by the inventor. The evidence adduced in behalf of the defendant, particularly his own testimony, rendered it incumbent upon the court to submit this question, among others, to the consideration of the jury. The rights of the plaintiff can be no greater than those of his assignor; and Van Hoevenbergh could have no reason to complain of a failure to recover upon a contract which he knew was entered into for the purpose of enabling the parties to turn over to a company thereafter to be oragnized a complete title to the invention represented by his letters patent. The parol evidence admitted by the court to show that the intention of the parties was something different from that expressed in the instrument, was, under these circumstances, properly received, and should not therefore have been disregarded by the court. The facts in this case constitute an exception to the general rule that parol evidence cannot be admitted to vary the terms of or defeat a written instrument.

There is also another ground upon which the defendant had the right to have his case submitted to the jury, and that is the conflicting evidence upon the question whether Van Hoevenbergh had performed all of the duties and obligations assumed by him by the written agreement. The evidence in behalf of the defendant of the refusal of Van Hoevenbergh to proceed with the experiments for which preparation had been made for them at Washington until he had received a thousand dollars more from the defendant, raised a question which could not be disposed of by the court alone under objection. All of these matters were properly urged at the trial, under suitable and timely objections, exceptions, and requests, and their consideration necessarily leads to a new trial. New trial granted, with costs to the defendant, to abide the event of the action. All concur.